**UDALL | SHUMWAY**
COUNSELORS AT LAW SINCE 1965

1138 NORTH ALMA SCHOOL ROAD, SUITE 101
MESA, ARIZONA 85201
Telephone: 480.461.5300 | Fax: 480.833.9392

Bradley D. Gardner (SBN: 011211)
Justin M. Brandt (SBN: 031573)
bdg@udallshumway.com
jmb@udallshumway.com
docket@udallshumway.com
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| BARRY M. LYNCH, | Case No.: |
| Plaintiff, | **COMPLAINT** |
| v. | **(Jury Trial Demanded)** |
| INTER-CON SECURITY SYSTEMS, INC, | |
| Defendant. | |

Plaintiff Barry M. Lynch ("Plaintiff"), through undersigned counsel, alleges the following facts and claims against Defendant Inter-Con Security Systems, Inc. ("Inter-Con") and demands a trial by jury pursuant to the Federal Rules of Civil Procedure, Rules of Civil Procedure, Rule 3, 7(a)1, 8(a) and 38(a) and (b) and alleges as follows:

**GENERAL ALLEGATIONS**

1. This is an action alleging race and age discrimination in the workplace brought pursuant to Title VII of the Civil Rights Act of 1964, 1991, 42 U.S.C. §2000e, and for violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 623, 630 and 631.

2. This Court has jurisdiction over this case under 28 U.S.C. §§1331.

3. Venue is proper in this District under 28 U.S.C. §1391.

4. Plaintiff is a citizen of the United States of America residing in Maricopa County, Arizona.

5. Plaintiff is also African-American and Native American in race and 67 years of age.

6. Upon information and belief, Defendant Inter-Con is an Arizona corporation located in Maricopa County, Arizona and a provider of physical security services to a variety of public and private entities across the country and around the world.  Inter-Con's clients rely on the Company to provide security and protection to their facilities, invitees and employees.  One such client is the United States Marshals Service ("USMS").  The USMS Judicial Security Division is responsible for protecting federal courthouses across the country, including the Sandra Day O'Connor U.S. Courthouse in Phoenix, Arizona.

**NATURE OF THE CASE**

7. Plaintiff realleges the aforementioned paragraphs as if fully set forth herein.

8. Plaintiff was employed by Inter-Con as a Court Security Officer at all times material to this Complaint.

9. Gerald Barnabas ("Barnabas") was employed by Inter-Con as the Site Supervisor.

10. Barnabas served as Plaintiff's direct supervisor.

11.     Plaintiff was hired on or about May 26, 2005, and worked eleven (11) years without incident.

12.     Plaintiff received a Commendation Letter from Jennifer Harkins of the U.S. Marshals Service for his positive actions on July 7, 2016, for assisting a woman who had fallen off the curb on the street and fractured her ankle.  Plaintiff kept an eye on oncoming traffic, retrieved the injured woman's belongings, and remained on site until Phoenix Fire responded.  His care and compassion for the injured woman were commendable.

13.     His supervisor Barnabas, unfortunately, had a history of race and age-related issues both prior to and during his supervisory position with Inter-Con.

14.     When Barnabas became the Arizona Site Supervisor, the position for Lead Security Officer ("LCSO") became available following the retirement of LCSO Juan Pedez in 2012.  Several individuals applied for the position.  All of the individuals were white, except for Officer Jerry Outley, who was black.  Officer Outley, got the position because he had the most experience.  This angered some of the other white officers who had applied for the position.  On two separate occasions, Plaintiff walked into the break room when Barnabas and other white officers were engaged in negative conversations about Officer Outley's ability as a black man.  As soon as they saw Plaintiff, they would change the subject and Barnabas would leave the break room.  Plaintiff informed Officer Outley of the conversations after hearing them.

15.     Plaintiff overheard some of the white officers talking about utilizing Akal Security Company's anonymous hotline to file complaints against Officer Outley.

3

Shortly after hearing those comments, an investigation was conducted by Barnabas and a representative from Akal Management of Officer Outley. The investigation resulted in the removal of Officer Outley from his position, placed on probation, and later transferred to the bankruptcy building.

16. During the period of the Michael Brown shooting incident in Ferguson, Missouri, Plaintiff walked into the men's restroom and overheard Barnabas telling an unidentified male about how the police in Ferguson should just let those people burn their community down. It was obvious from the look on Barnabas' face that he was not expecting Plaintiff to walk into the room.

17. On another occasion, Plaintiff asked Barnabas in passing if he knew the status of the Glendale casino. Barnabas remarked, in a somewhat smug way that the Indians already get money from the government. They did not need another casino to take our money. Plaintiff then explained to Barnabas that he was part Indian and that his family is from an Oklahoma tribe.

18. While working along with several other officers, for a high school prom at the Courthouse, in the spring of 2013, Plaintiff was the only officer who worked outside. The white officers were scheduled to work inside. The white officers were upset that Officer Lynch was allowed to work outside, while they were committed to working inside. The white officers complained to Barnabas about this assignment.

19. Upon information and belief, these complaints were part of his motivation for treating the Plaintiff in a harsher fashion than other employees as more fully identified below.

20. On June 27, 2016, the U.S. General Services Administration reported that lights used to illuminate the Flag at the Sandra Day O'Connor U.S. Courthouse in Phoenix, Arizona were missing. Plaintiff was working in the Control Room on this date and saw a suspicious individual riding a bicycle with what appeared to be a suitcase on his handlebars around the courthouse flagpole area. He then saw the suspicious individual doing something undiscernible by the flagpole. Plaintiff advised Lead Officer Tom Spurlock and CSO Dave Zavros of the suspicious activity. Plaintiff then saw the suspicious individual do something that caused a spark at the flagpole. Officer Zavros answered that he was en-route to check out the individual. Shortly after Officer Zavros' response, Plaintiff saw the individual ride off with what appeared again to be a suitcase straddled across his handle bars. Plaintiff advised by radio of the individual's actions and Officer Zavros responded by stating that if the suspicious individual returned, to please advise, and he would go check out the individual. Sometime later Plaintiff saw the individual enter the handicapped area of the lot on his bicycle. Plaintiff again advised Officer Zavros that the suspicious individual was on the grounds. Officer Zavros advised that he was once again en-route. The individual rode up to the flagpole again, stopped, appeared to be doing something with the wires at the flagpole and then rode off again before either Officer Zavros or Officer Spurlock could get outside to see what the suspicious person was doing. After this event, it was learned that the lights from the flagpole were missing.

21. Mr. Barnabas interviewed Officers Spurlock and Zavros and Plaintiff regarding the missing flagpole light incident. The result of his investigation was that Plaintiff was the only one disciplined.

22. Plaintiff was placed on suspension for a week without pay and moved to a day-shift position for the alleged infraction of policy. Neither Lead Supervisor Spurlock, nor CSO Zavos (both men are white and younger than Plaintiff), who were both present and failed to respond, received any disciplinary action.

23. Plaintiff received a Letter of Suspension (5 days without pay) on July 18, 2016, for purported violations of Performance Standards.

24. Barnabas never forwarded Plaintiff's July 7, 2016, Commendation Letter to his superiors at Inter-Con, knowing that this may influence their disciplinary investigation of Plaintiff's records.

25. Subsequently on December 12, 2016, Plaintiff responded to a breach at the U.S. Federal Courthouse. He notified Lead Chief Security Officer Tom Spurlock of this breach. Officer Spurlock was working in the Control Room at the time and should have seen the person at the front door and notified the others of the breach. He failed to do so but learned of this only after being advised by the Plaintiff.

26. On or about December 22, 2016, Plaintiff was contacted by Barnabas and informed that based on the aforementioned incident which happened on December 12, 2016, Plaintiff was being suspended with pay pending completion of an internal investigation. Nonetheless, Spurlock was allowed to work day shift pending the investigation. Once again, Plaintiff was singled out and given disciplinary action.

6

27. Ultimately on or about December 28, 2016, Plaintiff received a call from Barnabas and was informed that his employment was terminated immediately based on the outcome from his investigation, but Spurlock was not terminated for his conduct.

28. As indicated in the foregoing, White employees in the Department were not subjected to the same conditions of employment as Plaintiff and Plaintiff was subjected to such conditions solely on the basis of his race and age.

29. The discrimination summarized above had a substantial negative impact on Plaintiff's employment and psychological well-being and continues to do so. Plaintiff has had to seek outside guidance in dealing with his termination.  It has impacted his sleep and given him both chest pains and pain under his arms.  The stress of applying for unemployment and not being able to help his mother with her financial needs, or his granddaughters with college tuition, has had a severe impact on his physical and mental well-being.

30. Plaintiff gave Inter-Con direct notice of the discrimination.

31. Inter-Con also knew or should have known of the discrimination because it pervaded the workplace and created a hostile working environment.

32. Notwithstanding such notice, Inter-Con failed to meaningfully investigate and remediate Plaintiff's complaints and, in fact, ratified the misconduct of Barnabas.

33. Defendant's conduct as summarized above was intentional, malicious, and in reckless disregard of Plaintiff's federally-protected rights.

34.     Based on the misconduct of Inter-Con as summarized above, Plaintiff timely filed a charge of discrimination against Inter-Con with the United State Equal Employment Opportunity Commission on January 24, 2017.

35.     Plaintiff received a Right to Sue Letter from the United States Equal Employment Opportunity Commission on approximately January 31, 2018, and timely commenced this action within ninety-days of his receipt of that letter. *See* attached Exhibit "A."

**COUNT I**
**Race Discrimination**
**Title VII of the Civil Rights Act of 1964, as Amended**

36.     Plaintiff realleges the aforementioned paragraphs as if fully set forth herein.

37.     For the reasons above, Plaintiff believes he was discriminated and retaliated against because of his race (African American and American Indian), in violation of the Title VII of the Civil Rights Act of 1964, as amended.

38.     It is a violation of Title VII of the Civil Rights Act of 1964 as amended, to discharge an individual because of such individual's race or ethnicity.

39.     Title VII also prohibits employers from maintaining a discriminatory working environment that allows harassment based on race or ethnicity.

40.     Inter-Con violated Title VII by allowing Plaintiff to be harassed because of his race or ethnicity even after he notified the company of the hostile workplace environment.

8

41. Inter-Con violated Title VII by discharging Plaintiff because of his race or ethnicity.

42. Plaintiff is entitled to recover damages, including but not limited to, his lost compensation, future pecuniary and nonpecuniary losses, emotional pain and suffering, punitive damages, interest, attorney's fees, and costs as a consequence of Inter-Con's violation of Title VII.

## COUNT II
## Age Discrimination
## Age Discrimination in Employment Act of 1967

43. Plaintiff realleges the aforementioned paragraphs as if fully set forth herein.

44. Defendant subjected him to discrimination because he was a 67-year-old man. On December 28, 2016, after 11 years of service to Inter-Con, they summarily fired Plaintiff. Upon information and belief, Inter-Con replaced him with an employee who is younger, has less seniority at Inter-Con and significantly less experience in the Security Services industry.

45. Defendant marginalized Plaintiff while treating younger similarly-situated employees more favorably.

46. It is a violation of the Age Discrimination in Employment Act ("ADEA"), to discharge an individual because of such individual's age.

47. Plaintiff is entitled to recover damages, including but not limited to, his lost compensation, liquidated damages, attorney's fees, and costs as a consequence of Inter-Con's violation of the age discrimination laws.

**WHEREFORE**, Plaintiff respectfully requests the Court to:

A.  Issue a declaratory judgment that the conduct of the Defendant as described above violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964, 1991, 42 U.S.C. §2000e, and further violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 623, 630 and 631;

B.  Issue an Injunction ordering Defendant not to discriminate against the Plaintiff and others similarly situated;

C.  Reinstate the Plaintiff to his previously held position with Defendant;

D.  Award Plaintiff general damages, nominal damages, compensatory damages, and punitive damages against Defendant in an amount to be determined at trial;

E.  Award Plaintiff liquidated damages incurred in connection with his age discrimination cause of action;

F.  Award Plaintiff his attorney's fees and costs under the aforementioned discrimination statutes; and

G.  Award Plaintiff all other relief just and appropriate under the circumstances.

**DEMAND FOR JURY TRIAL**

Pursuant to the Federal Rules of Civil Procedure 38, Plaintiff demands a trial by jury.

///

**DATED:** April 30, 2018.

**UDALL SHUMWAY PLC**

By: /s/*Bradley D. Gardner, Esq.*
Bradley D. Gardner, Esq.
Justin M. Brandt, Esq.
1138 North Alma School Road, Suite 101
Mesa, Arizona 85201
*Attorneys for Plaintiff*

### CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2018, I electronically filed the attached document with the United States District Court using ECF.

By: */s/Jodi L. Jankowski*

5159577.2/116223.1